Joseph KARNES, Plaintiff–Respondent,

v.

Joe RAY and Rob Ray,
Defendants–Appellants.

No. 17144.

Missouri Court of Appeals,
Southern District,
Division Two.

May 22, 1991.

Jay White, Rolla, for Joe Ray.

Charles T. Smallwood, St. James, for Rob Ray.

Sidney T. Pearson III, St. James, for plaintiff-respondent.

SHRUM, Judge.

In this negligence case, the defendants Rob Ray and Joe Ray appeal a judgment entered against them following a jury verdict for $8,500 in favor of the plaintiff Joseph Karnes for his personal injuries. In separate briefs, the defendants present two identical allegations of trial court error in instructing the jury; defendant Rob Ray separately raises three additional points of error concerning jury instructions. Because we have determined that the plaintiff's verdict directing instructions 8 and 9 were prejudicially erroneous, we reverse and remand.

## FACTS

We briefly recount the allegations and evidence relevant to the plaintiff's verdict directing instructions. The plaintiff alleged in his petition that he was injured March 24, 1983, while working as a laborer for the defendant Ray brothers who, the plaintiff claimed, were partners in a tree cutting business. The plaintiff alleged Joe Ray "felled a tree, which fell on top of Plaintiff, injuring him severely."

From the plaintiff's testimony, and that of his mother and grandmother, emerge the following facts that support the verdict. On the day of the incident, the plaintiff accompanied the defendants to a wooded area where he was to assist them by "carrying the gas and oil and stuff. Keeping track of that so Joe didn't fall a tree on it. And then helping Rob hook chokers (chains) on the logs." Immediately before the plaintiff was struck, Joe Ray was cutting trees with a chain saw and Rob Ray was pulling the logs to the truck. The plaintiff did not remember if Joe had given him any instructions to stay out of the way of falling trees. The last thing the plaintiff remembered the morning he was struck was "[h]earing Rob yell" but, because of the noise, he could not discern what Rob Ray said. The plaintiff sustained a head injury, was unconscious for more than a week, and subsequently experienced headaches and "memory problems."

The plaintiff's mother was called to the hospital the morning the plaintiff was injured. When she arrived both defendants were present, and Joe Ray told her "he cut a tree down, it hit the top of another tree, and that's what hit my son." Rob Ray was "kind of helping Joe Ray tell me what happened." The plaintiff's grandmother was in the hospital waiting room with the defendants and heard Joe Ray say "he was cutting down a tree and it fell and hit another tree, and then I understood that a big limb [from the second tree] fell and hit Joe then." The grandmother heard Rob Ray make statements that indicated he agreed with Joe Ray's account of the incident.

At the close of the plaintiff's case, the defendants moved for directed verdicts. In responding to those motions, the plaintiff's attorney argued that "from the evidence adduced the jury can conclude that Mr. Joe Ray felled a tree without determining whether any of them was in the way, and it fell on my client. That's negligence." Asked by the trial court, "What negligent act did [Joe Ray] do?," the plaintiff's lawyer responded, "We believe the negligent act he did was cutting a tree without determining that no one was in the path of it or its effects as it fell." The plaintiff's lawyer admitted, "I don't think we have negligence as a matter of law" but, he argued, "[s]imply cutting a tree and not ascertaining first what is in the way of it falling is in itself negligent."

The defendants' account of the day's events differs from the plaintiff's. Joe Ray testified he went to cut firewood while Rob Ray and the plaintiff went to the river to dig fishing worms. Joe Ray said he was cutting a 35– to 40–foot tree. Right before he "turned it loose" he saw the plaintiff who was "a good 150 yards" away. The tree Joe Ray felled made "a big thunder and crash" and shook the ground on impact. Joe Ray said he saw a second tree, 10 to 12 feet tall, fall and hit the plaintiff but, he insisted, "The tree that I fell never come close to him" and "never come even close to" the tree that struck the plaintiff.

Rob Ray testified he had left the river bank to look for trees to cut; the plaintiff "was supposed to have been [at the river] and dug them night crawlers." Rob Ray heard Joe Ray's chain saw stop running and heard Joe Ray yell. Rob Ray started toward Joe Ray who said, "Joe Karnes hurt himself down there." Rob found the plaintiff at a point 300 to 400 yards from where Joe had cut the tree.

The Ray brothers denied making the statements at the hospital attributed to them by the plaintiff's mother and grandmother, denied they were business partners, and disputed the plaintiff's claim that he was an employee of one or both of them. Rob Ray said that while they were en route to their destination, the plaintiff "lit him up a joint ... a marijuana joint." Joe Ray said he saw the plaintiff "[s]moking some kind of a little old do-daddy. I don't know what it was."

The defendants renewed their motions for directed verdicts at the close of all evidence. Over the defendants' objections, the trial court gave the verdict directing instructions offered by the plaintiff. Instruction 8 reads:

Your verdict must be for plaintiff Joseph Karnes and against Defendant Joe Ray if you believe:

First, defendant Joe Ray felled a tree which struck another tree, which struck Joseph Karnes, and

Second, defendant Joe Ray was thereby negligent, and

Third, as a direct result of such negligence, plaintiff sustained damage.

Instruction 9 reads:

Your verdict must be for plaintiff Joseph Karnes and against Defendant Rob Ray if you believe:

First, defendant Rob Ray was a partner in a partnership in which Joe Ray

was also a partner, and defendant Joe Ray was acting in the scope of the partnership's business, and....

Paragraphs second, third, and fourth of instruction 9 are identical to paragraphs first, second, and third of instruction 8. In a separate instruction, the court submitted a definition of negligence based on MAI 11.02. The defendants renewed their objections to instructions 8 and 9 in their posttrial motions.

■ On appeal, the defendants complain that the trial court erred in giving instruction 8 because it "failed to instruct as to any act of negligence in felling a tree which struck another tree which struck the plaintiff." [1]

## ANALYSIS AND DECISION

■ If a Missouri Approved Instruction is applicable to a particular case, its use is mandatory. Rule 70.02(b); *Bross v. Denny,* 791 S.W.2d 416, 422 (Mo.App.1990). However, approved instructions are not "all encompassing," and there is not an MAI appropriate to every factual setting. *Venable v. S.O.R., Inc.,* 713 S.W.2d 37, 40 (Mo.App.1986). Rule 70 contemplates the frequent situations in which no MAI is applicable and provides for modification of an existing MAI or drafting of a "not-in-MAI" instruction. Rule 70.02(e). The test of a modified MAI or not-in-MAI instruction is whether it follows the substantive law and can be readily understood by the jury. *Murphy v. City of Springfield,* 794 S.W.2d 275, 278 (Mo.App.1990); *Footwear Unlimited, Inc., v. Katzenberg,* 683 S.W.2d 291, 296 (Mo.App.1984). As with the MAI's, a modified MAI or not-in-MAI instruction should require a finding of all ultimate facts necessary to sustain a verdict. *Grindstaff v. Tygett,* 655 S.W.2d 70, 73 (Mo.App.1983).

1. Because we reverse due to error in instructions 8 and 9, we need not examine the other points in the defendants' briefs. Were it necessary, we would not consider them because they do not comply with Rule 84.04(d) which requires an appellant to state wherein and why the challenged ruling of the trial court was erroneous. As a result, the points relied on fail to advise the party opponent and the court of

the issues on appeal. *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). Moreover, the defendants cite no authority under any of their points relied on except the ones challenging instruction 8. If a point is one for which precedent is appropriate and available, an appellant who expects to prevail should cite the precedent. *Thummel,* 570 S.W.2d at 687.

There is no MAI applicable to facts of the case before us. As a result, the plaintiff drafted and the court submitted, as instruction 8, a modified version of MAI 17.01.[2] Instruction 8 substitutes the phrase "defendant Joe Ray felled a tree which struck another tree, which struck Joseph Karnes" for the MAI 17.01 hypothesis "defendant violated the traffic signal...." For the reasons that follow, we conclude instruction 8, in particular paragraph first, does not follow the substantive law in that it does not require a finding of all ultimate facts necessary to sustain the verdict.

■■■ A plaintiff's verdict directing instruction must require the jury to find all ultimate issues or elements necessary to the plaintiff's case except those unmistakably conceded by both parties. *Galemore Motor Co. v. State Farm Mut. Auto. Ins. Co.*, 513 S.W.2d 161, 167 (Mo.App.1974); *Young v. Kansas City Power and Light Co.*, 773 S.W.2d 120, 125 (Mo.App.1989). It is hornbook law that "[i]n any action for negligence, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's failure." *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990). A defendant's failure to perform his duty to protect the plaintiff from injury can take the form of an omission or an affirmative act. *See Lowrey v. Horvath*, 689 S.W.2d 625, 627 (Mo. banc 1985). Although an employer is not an insurer of the safety of his employee, *Hightower v. Edwards*, 445 S.W.2d 273, 275 (Mo. banc 1969), an employer has a duty to furnish employees with a safe place to work, *Graczak v. City of St. Louis*, 356 Mo. 536, 539, 202 S.W.2d 775, 776–77 (1947), and an employer must use all reasonable precautions which ordinary prudence would dictate, under the circumstances, to avoid subjecting the employee to risk of injury. *Miller v. F.W. Woolworth Co.*, 328 S.W.2d 684, 688 (Mo. banc 1959).[3]

■■ Instruction 8 fails to require the jury to find "a duty on the part of the defendant to protect plaintiff from injury [and a] failure of the defendant to perform that duty...." *Krause*, 787 S.W.2d at 710. The phrase "defendant Joe Ray felled a tree which struck another tree, which struck Joseph Karnes" simply describes a series of events; it cannot be substituted automatically for "defendant violated the traffic signal," a phrase which describes a failure to perform a duty. Instruction 8 does not submit the ultimate facts which define for the jury the plaintiff's specific theory of negligence. *See Grindstaff*, 655 S.W.2d at 73. Instruction 9 is similarly deficient.

With the exception of MAI 24.01, there is no MAI specifically designated for cases involving negligence actions brought by an employee against an employer. *Leathem v. Longenecker*, 405 S.W.2d 873, 875–76 (Mo.1966). MAI 24.01 is designed for use in Federal Employers' Liability Act cases.[4]

---

**2.** MAI 17.01 [1980 Revision] Verdict Directing— Single Negligent Act Submitted reads as follows:

Your verdict must be for plaintiff if you believe:

First, defendant violated the traffic signal, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence plaintiff sustained damage.

**3.** We note that instructions 8 and 9 fail to require the jury to find that the plaintiff was an employee of the defendants. This omission is not asserted by the defendants as error, but the existence of an employer-employee relationship was vigorously disputed at trial.

**4.** MAI 24.01 [1981 Revision] Verdict Directing— F.E.L.A.—Failure to Provide Safe Place to Work reads as follows:

Your verdict must be for plaintiff if you believe:

First, plaintiff was an employee of defendant and a part of his employment in some way closely and substantially affected interstate commerce, and

Second, defendant either failed to provide: reasonably safe conditions for work, or reasonably safe appliances, or reasonably safe methods of work, or reasonably adequate help, and

Third, defendant in any one or more of the respects submitted in Paragraph Second was negligent, and

Our supreme court has said that MAI 24.01 should not be used in non-F.E.L.A. employer liability cases because, in ordinary negligence actions, the negligent conduct must be a substantial factor in bringing about the injury, whereas the F.E.L.A. instruction permits recovery where the defendant's negligence resulted in only "the slightest part" of the plaintiff's injury. *Ricketts v. Kansas City Stock Yards Co.,* 484 S.W.2d 216, 221–22 (Mo. banc 1972).

Although instruction 8 was not based on MAI 24.01, the *Ricketts* court's discussion of the need for specificity in a negligence claim verdict directing instruction is germane. In *Ricketts,* the employee was on a scaffold helping remove a concrete gutter from a building when part of the gutter fell causing him injury. Using MAI 24.01, the employee submitted the following propositions in his verdict directing instruction:

> Your verdict must be for the plaintiff if you believe:
> First, defendant failed to provide reasonably safe conditions for work, and
> Second, defendant was thereby negligent. . . .

484 S.W.2d at 221.

The supreme court found paragraph first "too broad and indefinite" because it did not submit "any condition as not being reasonably safe." *Id.* at 222. The court pointed out that the employee's main claim "seems to be that the method used by [the employer] to remove the gutter was unsafe because the men stood on a scaffold below the gutter and used chipping hammers to make pieces of the gutter fall around where they stood." *Id.* The court suggested that the plaintiff's verdict directing instruction thus could have submitted "a finding that the place or conditions of work were unsafe because or on account of having the men work on a scaffold where they would be standing below the gutter they were required to remove." *Id.* Because the employer's evidence was that the method used was as safe as or safer than the method suggested by the employee's ex-

pert, the safety of the method used was an issue for the jury. Failure of the verdict directing instruction to require a finding on that issue made the instruction prejudicially erroneous. *Id.*

Another employer-employee negligence case in which the jury was erroneously instructed according to MAI 24.01 is *Searcy v. Neal,* 509 S.W.2d 755 (Mo.App.1974). There the court of appeals observed that the following propositions were deficient in their failure to require "a finding of a particular unsafe condition":

> Second, defendant failed to provide reasonably safe tires on his truck, and
> Third, defendant knew or by using ordinary care should have known of such condition and that such condition was reasonably likely to cause substantial harm

*Id.* at 762.

■ We hold that the plaintiff's instruction 8 was erroneous because it did not require the jury to find a particular unsafe act or omission by the defendant that caused the injury. From the trial transcript, it appears that the plaintiff's theory of recovery was that Joe Ray was negligent because he felled the tree without first determining if harm to the plaintiff was foreseeable. However, instruction 8 gave the jury a roving commission to speculate and determine on its own why and in what manner the felling of the tree was negligent. *See Grindstaff,* 655 S.W.2d at 74. Instructional error is presumed prejudicial when the verdict is in favor of the party at whose instance the instruction is given. *Id.*

With the exception of its hypothesis of a partnership, instruction 9, the verdict directing instruction against Rob Ray, is identical to instruction 8 which we have concluded was prejudicially erroneous. Although the challenge to instruction 9 was not preserved for our review because of violation of Rule 84.04(d), we hold that instruction 9 was prejudicially erroneous. Rule 84.13(c); *see M.F.A. Coop. Ass'n. v.*

Fourth, such negligence resulted in whole or in part in [injury to plaintiff] [the death of

(decedent's name)].

*Elliott*, 479 S.W.2d 129, 134[15] (Mo.App. 1972).

The judgment against both defendants is reversed and the cause remanded.[5]

FLANIGAN, C.J., and PARRISH, P.J., concur.

---

**5.** We are not asked on this appeal to determine if the plaintiff made a submissible case. The trial court expressed some doubt that the plaintiff made a submissible case; we share that doubt. On remand, the plaintiff will have an opportunity to produce additional evidence, if he deems it necessary.